**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ELISEO VALLES-ESTRADA,

     Defendant-Appellant.

No.06-8057
(D.C. No. 05-CR-258-WFD)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY, HOLLOWAY,** and **GORSUCH**, Circuit Judges.

Defendant-Appellant Valles-Estrada pleaded guilty to entering a conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 21 U.S.C. § 846. Valles-Estrada appeals the district court's decision refusing to apply the safety-valve provision from U.S.S.G. § 5C1.2 of the Sentencing Guidelines. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we **AFFIRM**.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Valles-Estrada has focused his appeal on his post-conviction conduct: did he truthfully disclose all the information he possessed relating to his offense? The district court heard from both sides and concluded that Valles-Estrada did not.

The proceedings against Valles-Estrada began under the impression that he would likely receive a safety-valve adjustment. Aplee. App., Vol. I, at 21. But relations between Valles-Estrada and the Government soon turned sour. Appearing before the district court after the case agent had interviewed Valles-Estrada, the Government informed the court that Valles-Estrada did not fully disclose the information and evidence he had concerning his offense. Aplt. App. at 16-17.

The Government attacked Valles-Estrada's statements on several grounds. For example, Valles-Estrada told the agent that he received the drugs from "a fair man" named "El Guero Lares."[1] Aplee. App., Vol. II, at 71. The Government claimed that this statement is incredible on its face. Aplt. App. at 17. Putting some substance behind its assertion, the Government informed the court that it thoroughly investigated this alleged drug source, but no one recognized a person with this name who would or could be a drug

---

[1]Although Valles-Estrada argues that he described his drug source to the agent, there is no evidence in the appellate record that he provided a more detailed description than this. See Aplt. Br. at 5 (supporting his assertion by citing paragraph ten of the pre-sentence report, which states no more than Valles-Estrada claims to have received the drugs from "a fair man" named "El Guero Lares" and the DEA disagrees with defense counsel's claim that Valles-Estrada gave information about his source in two long proffer hearings).

source. Id. at 18.

Valles-Estrada also told the agent that El Guero Lares operated in Gillette, Wyoming. Aplee. App., Vol. II, at 71. But the Government informed the court that Valles-Estrada's phone records are inconsistent with this contention. Specifically, the Government reviewed Valles-Estrada's phone records concerning the time of his controlled deliveries, and the phone records reflect that he made calls to a person in Windsor, Colorado—evidence that his drug source was located in a different city from the one he claimed.

Finally, the Government and Valles-Estrada disputed whether Valles-Estrada refused to disclose certain information for fear that doing so would jeopardize his family's safety. The Government asserted that Valles-Estrada was not fully forthcoming because he feared for his family's safety. The pre-sentence report agrees: "Agent Waldock believes [that] the defendant was 'high up on the food chain,' and he was unwilling to tell authorities everything he knew as he was in fear for his family's well[-]being." Id. at 70. Valles-Estrada contends that he fully disclosed all the information that he possessed, yet his counsel stated that "I'm sure the Court can also be certainly sensitive to the fact that when family members are involved, there is some natural, understandable, prophylactic reluctance to . . . involve family members; but that—that [sic] in and of itself should not disqualify him from [receiving the safety-valve

adjustment]."[2]  Aplt. App. at 21-22.  Soon after, the court recognized the problem with this position:

> [t]hose who deal in the drug trade in Chihuahua are unsavory characters. They will gun down a police chief in Tijuana; they wouldn't hesitate to gun down this defendant's family members in reprisal for cooperation with the United States.  Perhaps your client has taken that into account, and perhaps he concludes that in balance he has no alternative but to serve the ten years.
> But I'm not going to engage in flights of fantasy or fiction to determine that he is somehow safety-valve-eligible. . . . [T]he fact of the matter is, sir, you were dealing with some very unsavory individuals who don't have a great deal of value for your life or the life [sic] of your children, and that was your misfortune . . . .
> Id. at 23, 26.

After granting Valles-Estrada several opportunities to disclose the information he possessed, and after considering these facts, the district court concluded that Valles-Estrada had not been fully forthcoming.  Id. at 23, 26.  Thus, the district court concluded that Valles-Estrada was ineligible for the safety-valve adjustment, _id._ at 23, and the court imposed a mandatory minimum sentence of 120 months' imprisonment and 5 years' supervised release, inter alia.  Id. at 27-29.

## II.  DISCUSSION

We review for clear error a district court's determination of eligibility for a safety-valve adjustment.  United States v. Stephenson, 452 F.3d 1173, 1180 (10th Cir. 2006).

-------------------

[2]This excerpt originally stated that "there is some natural . . . reluctance to *not* involve family members." (emphasis added).  It is clear from the record and the district court's response, however, that Valles-Estrada's counsel misused this negative and meant to suggest that there is a reluctance to involve family members, not a preference for involving them.

But our review is de novo to the extent the district court interpreted the scope and meaning of the safety-valve provision. Id. "In conducting our review, '[w]e are cognizant that the district court's application of the safety valve is fact specific and dependent on credibility determinations that cannot be replicated with the same accuracy on appeal.'" Id. (citing United States v. Virgen-Chavarin, 350 F.3d 1122, 1129 (10th Cir. 2003)).

Congress enacted the safety-valve provision to avoid the harsh impact of mandatory minimum sentences on the "offenders who most warrant proportionally lower sentences—offenders that by guideline definitions are the least culpable . . . ." United States v. Acosta-Olivas, 71 F.3d 375, 378 (10th Cir. 1995). A defendant is entitled to a safety-valve adjustment under U.S.S.G. § 5C1.2[3] if he or she proves by a preponderance of the evidence that, *inter alia*,

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this

---

[3]U.S.S.G. § 2D1.1(b)(7) states that a defendant is entitled to a two-level reduction of the offense level if he or she satisfies the safety-valve criteria set forth in § 5C1.2 (which is identical to 18 U.S.C. § 3553(f) where Congress enacted the safety-valve provision). The offense-level reduction occurs without regard to the statutory minimum sentence or a statutory minimum term of supervised release. § 5C1.2(a). See also § 5C1.2, comment (n. 9).

requirement.[4]

See Stephenson, 452 F.3d at 1179 (describing the defendant's burden of proof).

This provision casts a wide net over the kind of information that a defendant must disclose before receiving the two-level reduction. As explained in U.S.S.G. § 5C1.2, this provision requires a defendant to truthfully disclose to the Government "all information and evidence" that the defendant has about the "offenses that were part of the same course of conduct or of a common scheme or plan . . . ." The Guidelines's commentary defines "offense or offenses that were part of the same course of conduct or of a common scheme or plan" as "the offense of conviction and all relevant conduct." U.S.S.G. § 5C1.2, comment (n. 3). The Guidelines define "relevant conduct" to include "in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

The parties do not dispute that Valles-Estrada's information about his drug source falls within the ambit of § 5C1.2's disclosure requirement. But Valles-Estrada argues that the Government's position that he failed to disclose "all information and evidence" is unsupported by any evidence, aplt. br. at 6; that the Government's failure to corroborate his information is irrelevant, id. at 5; and that his cellular phone records do not

---

[4]A defendant must also satisfy four additional criteria, but both parties agree that Valles-Estrada has done so. Aplt. Br. at 5; Aplee. Br. at 9. We therefore omit discussion of these criteria.

necessarily reflect the phone calls he made to his drug source because he could have called from a pay phone or a different cellular phone. Aplt. Reply Br. at 4. He further claims that he disclosed the dates of his involvement in this offense, the name of the man he received the drugs from, a description of that person, and where his drug source delivered the drugs to him. Aplt. Br. at 5. Valles-Estrada therefore asserts that he proved by a preponderance of the evidence that he truthfully disclosed all the information that he possessed.

Valles-Estrada's position fails to account for our standard of review. When reviewing the district court's determination in this context, it is not our prerogative to weigh the evidence anew and substitute our own decision for the one the district court rendered. We must determine only whether the district court clearly erred. The district court had before it (1) the Government's assertion that it did not find evidence that Valles-Estrada's alleged drug source existed; (2) evidence that Valles-Estrada was calling an individual in Windsor, Colorado, not Gillette, Wyoming, where his alleged drug source operates; (3) evidence that Valles-Estrada gave a minimal and incredible description of his alleged drug source; and (4) evidence that Valles-Estrada did not disclose more information because he feared for his family's safety.

One can reasonably infer from these facts that Valles-Estrada did not truthfully disclose all the information and evidence that he possessed. Evidence that Valles-Estrada was tight-lipped because he feared for his family's safety suggests that he could have disclosed more information but for his fear. The fact that Valles-Estrada's drug-delivery

days included calling a person staying in Windsor, Colorado, not Gillette, Wyoming, where his alleged drug source operates, suggests that he lied about his drug source's location. The absence of evidence in the appellate record that Valles-Estrada gave more information about his drug source than he was a fair man named El Guero Lares underscores the dearth of his disclosures. And the fact that the Government could not find any evidence that Valles-Estrada's alleged drug source exists is at least some evidence against Valles-Estrada's position.[5]

Valles-Estrada's speculations—for example, that "any telephone calls could have been made from another cell phone or pay telephone," aplt. reply br. at 4—are beside the point. This is precisely the type of inference that the district court rejected based on the evidence presented. Although it might not be unreasonable to make the inferences that Valles-Estrada urges this Court to accept, the district court did not clearly err by concluding as it did. Accordingly, we affirm the district court's denial of Valles-Estrada's request for safety-valve relief.

Entered for the Court,

William J. Holloway, Jr.
Circuit Judge

---

[5]Valles-Estrada claims that the Government's failure to corroborate the existence of his drug source is irrelevant, as the Government cannot locate Bin Laden or Jimmy Hoffa even though it has been searching for them for several years. Aplt. Reply Br. at 4. Valles-Estrada's analogy is deficient, of course, for the questions here are whether a particular person existed at all—not whether the Government can locate a person that it knows exists—and whether the district court *clearly erred* by concluding, based on this evidence and several other pieces of evidence, that Valles-Estrada withheld information.